UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROCHELLE DANIEL,

    Plaintiffs,

v.                                              Case No. 12-12851

WEST ASSET MANAGEMENT, INC.,

    Defendant.
                                       /

**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFF'S MOTION TO SEAL**

On June 28, 2012, *pro se* Plaintiff Rochelle Daniel sued Defendant West Asset Management ("WAM") alleging that, by obtaining her TransUnion credit report on August 12, 2011, WAM invaded her privacy and violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. On October 31, 2012, this court dismissed Daniel's complaint pursuant to 28 U.S.C. § 1915(e)(2)(B). Daniel timely moved for reconsideration, which the court granted only with regard to her FCRA claims. Daniel seeks relief under 15 U.S.C §§ 1681b(f) and 1681q, arguing that WAM lacked a permissible purpose in obtaining her TransUnion credit report. WAM contends that it lawfully obtained the credit report while defending against Daniel's claims in an underlying action. WAM now moves for summary judgment.[1] The motion has been fully briefed,[2] and a hearing is unnecessary.

---

[1] WAM also asks the court to grant summary judgment on two claims that Daniel raised in her amended complaint (Dkt. # 8) that was filed after the case was reopened. The claims, intrusion upon seclusion (Count IV) and the negligent violation of § 1681q (Count III), are identical to those that were originally dismissed by an October 31, 2012 order and were not reinstated by the December 12, 2012 order granting Daniel's motion

*See* E.D. Mich. LR 7.1(f)(2).  For the following reasons, the court will deny WAM's motion for summary judgement.

## I. BACKGROUND

The parties were engaged in a lawsuit when WAM obtained Daniel's credit report.  On January 4, 2011, Daniel sued WAM alleging, among other things, that WAM violated the FCRA by inaccurately and without proper notice reporting to Experian, a credit reporting agency, a debt Daniel owed to AT&T (the "AT&T debt").  (Case No. 11-10034, Dkt. # 14 at Pg ID 61-62.)  On August 3, 2011, more than two months before the discovery deadline, WAM moved for summary judgment.  Daniel sent WAM her second set of discovery requests on August 9, 2011.  The discovery requests included requests for admissions from WAM regarding the reporting of the AT&T debt to Experian.  (Dkt. # 22 at Pg ID 160-63.)  On August 12, 2011, purportedly to answer Daniel's discovery requests, WAM obtained Daniel's credit report from a different consumer reporting agency, TransUnion.  (Dkt. # 22 at Pg ID 181 ¶ 11.)  Daniel claims that WAM had no permissible purpose for obtaining the TransUnion report because she had previously provided WAM with a copy of the Experian credit report in question.

---

for reconsideration.  Therefore, the claims have already been dismissed and are not at issue on summary judgement.

   [2] In her response (Dkt. # 24-2) and amended response (Dkt. # 25-2) to WAM's summary judgment motion, Daniel attached Exhibit 1, which consists of Daniel's credit report and information regarding her assets and liabilities.  Daniel seeks to keep the information confidential and moves to seal Exhibit 1.  WAM does not oppose the motion, and the exhibit will be sealed.

## II. STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must first show the absence of a genuine issue of material fact. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The burden then shifts to the non-moving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The non-moving party must put forth enough evidence to show that there exists a genuine issue to be decided at trial. *Plant*, 212 F.3d at 934 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id*. at 251-52. When deciding summary judgment motions, "the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003) (citing *Matsushita*, 475 U.S. at 587). The court does not weigh the evidence to determine the truth of the matter, but rather to determine if the evidence creates a genuine issue for trial. *Sagan*, 342 F.3d at 497 (quoting *Anderson*, 477 U.S. at 249).

### III. DISCUSSION

### A. Violations of § 1681b(f) and § 1681q

Daniel contends that WAM either willfully (Count II) or negligently (Count III) violated § 1681b(f) of the FCRA by obtaining her credit report without a permissible purpose. 15 U.S.C. § 1681b(f) provides:

> A person shall not use or obtain a consumer report for any purpose unless—
>
> (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and
>
> (2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

In order to succeed on her § 1681b(f) claim, Daniel must show: "(i) that there was a 'consumer report' within the meaning of the statute; (ii) that [WAM] used or obtained it; and (iii) that [WAM] did so without a permissible statutory purpose." *McFarland v. Bob Saks Toyota, Inc.*, 466 F. Supp. 2d 855, 867 (E.D. Mich. 2006). For the purposes of its summary judgment motion WAM concedes the first two elements. (Dkt. # 22 at Pg ID 147.)

Daniel also alleges that WAM knowingly and willfully obtained the report under false pretenses in violation of § 1681q (Count I). Section 1681q imposes criminal liability on "[a]ny person who knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses." Although § 1681q provides for criminal penalties, § 1681n allows parties to bring a civil action against "[a]ny person[3]

---

[3] WAM constitutes a "person" under 15 U.S.C. § 1681 *et seq.*, which defines "person" to include "any individual, corporation, . . . or other entity." 15 U.S.C.

who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer." 15 U.S.C. § 1681n(a). "[A] person is proceeding under false pretenses when she (1) knowingly and willfully obtains a consumer report for a purpose that is not sanctioned by the FCRA and (2) fails to disclose her true motivation to the consumer reporting agency." *Duncan v. Handmaker*, 149 F.3d 424, 426 (6th Cir. 1998).

Therefore, in determining whether WAM violated § 1681b(f) and § 1681q, the court must first decide whether WAM had "permissible purpose" in obtaining Daniel's credit report. But the statutes also impose a culpability requirement. To prove a violation of § 1681b(f), "the plaintiff must demonstrate that the defendant acted with the requisite degree of culpabilty—either negligence, 15 U.S.C. § 1681o(a), or willfulness, 15 U.S.C. § 1681n(a)." *McFarland*, 466 F. Supp. 2d at 867 (citing *Phillips v. Grendahl*, 312 F.3d 357, 364 (8th Cir. 2007) (*abrogated on other grounds by Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 46 (2007))). Section 1681q mandates that the defendant acted "knowingly and willfully." WAM chose not to brief the issue of culpability, arguing only that Daniel's claims should fail because it had a permissible purpose in obtaining her credit report. Accordingly, for the purpose of resolving its summary judgment motion, WAM has waived the culpability issues, and the only question before the court is whether WAM had a permissible purpose.

---

§ 1681a(b).

## B. Permissible Purpose

15 U.S.C. § 1681b(a)(3)(F)(i) makes it permissible for an agency to obtain a consumer report when it has a "legitimate business need . . . in connection with a business transaction that is initiated by the consumer." In *Duncan* the Sixth Circuit noted, "While a lawsuit occasionally may give rise to a 'legitimate business need' for a consumer report, trial preparation generally does not fall within the scope of § 1681b." 149 F.3d at 427 (internal citation omitted). The *Duncan* court continued by explaining that "[i]n the limited instances where courts have allowed parties to obtain consumer reports . . . for use in litigation, the dispute typically has related to the collection of a debt owed by the consumer." *Id.* at 428. Here, the underlying lawsuit for which WAM obtained Daniel's credit report did not concern WAM attempting to collect a debt from Daniel; instead, Daniel sued WAM alleging that it had improperly reported a debt. It is plausible that a debt collection agency would need a credit report to defend itself against a false reporting lawsuit. *See Spence v. TRW, Inc.*, 92 F.3d 380, 383 (6th Cir. 1996) (explaining that a consumer reporting agency may furnish a consumer report to a utility company facing allegations of false reporting in "preparation of [the utility company's] defense to the lawsuit"). However, WAM cannot claim it had such a need. WAM moved for summary judgment before it obtained Daniel's credit report, thereby demonstrating that it already had all of the facts it needed to defeat her claims.

WAM contends that it needed the TransUnion report to answer three discovery requests that Daniel served on WAM after it moved for summary judgment:

> Interrogatory No. 1: Provide explanation substantiating WAM's reporting of the account as "Date Open" on November 1, 2009, as reported to Experian.
>
> Request for Admission No. 13: Admit that you reported the debt to Experian on or about November 1, 2009.
>
> Request for Admission No. 14: Admit that you reported the "date open" as the date of posting the debt, which is November 1, 2009.[4]

(Dkt. # 22-4 at Pg ID 162, 171-72.) WAM acknowledges that Daniel attached to the discovery requests a one-page excerpt of her February 2, 2010 Experian credit report, which showed the AT&T debt reported by WAM, but claims it needed a complete report to respond to her requests. (Dkt. # 22 at Pg ID 141-42.) Yet on April 5, 2010, prior to serving the discovery requests, Daniel provided WAM with the complete February 2, 2010 Experian credit report as part of a settlement offer sent via certified mail. (Dkt. # 25-2 at Pg ID 283-93.) Thus, WAM incorrectly asserts that it had access to only an "unauthenticated" excerpt of Daniel's Experian credit report. (Dkt. # 22 at Pg ID 141.)

---

[4] It seems that Daniel was confused about the meaning of "date open" as it appears on her Experian credit report. "Date open" refers to the date the account was placed with WAM for collection. It does not reflect the separate date that WAM first reported negative information to Experian, nor does it reflect the date that Experian posted the AT&T debt to Daniel's consumer report. *See Glossary of Credit Terms*, Experian, www.experian.com/credit-education/glossary.html (last visited Aug. 6, 2013). WAM, however, demonstrated no confusion about the separate dates and their respective meanings. (*See* Case No. 11-10034, Dkt. # 27 at Pg ID 178 ¶¶ 5, 9.)

Even if WAM had access to only the partial report, WAM's argument against the excerpt's reliability is muddled by its contention that the partial Experian report was not dispositive of the discovery requests.  WAM asserts that it needed to compare the "date open" for the AT&T debt between Experian and the other major credit bureaus, but the Experian report did not include information from Equifax and TransUnion because Daniel did not pay the required upgrade fee.  (Dkt. # 22 at Pg ID 141-42.)  Thus, WAM claims that it was forced to obtain Daniel's TransUnion report in order to independently established the "date open."  The argument is specious as WAM fails to explain why, if it would not rely on a partial Experian report that only included information from Experian, it would rely on the same partial Experian report that showed information from all three consumer reporting agencies.

Assuming, as WAM alleges, that the partial Experian report was unreliable, WAM argues that it was justified in pulling Daniel's TransUnion report because its internal investigation uncovered no information about WAM's reporting of the AT&T debt.  WAM explains that it obtained the TransUnion report because it is the consumer reporting agency from which WAM routinely requests reports for accounts like Daniel's.  (Dkt. # 22 at Pg ID 142.)  However, the discovery requests for which WAM claims to have needed Daniel's credit report refer explicitly to WAM's reporting of the debt to Experian;

the discovery requests do not refer to, or otherwise appear to involve, TransUnion.[5]

WAM does not clarify how obtaining Daniel's TransUnion report in August 2011 would enable it to answer questions about its reporting of the AT&T debt to Experian in November 2009.

WAM admits that it was unable to find any "date open" information on the TransUnion report it pulled on August 12, 2011.  (Dkt. # 22 at Pg ID 142.)  This is unsurprising given that WAM had reason to know that no report from any of the major consumer reporting agencies would provide further information about WAM's 2009 reporting of the AT&T debt.  In an affidavit attached to WAM's August 3, 2011 motion for summary judgment in its first lawsuit against Daniel, WAM's Senior Vice-President, Jill Jensen, affirmed that "[o]n or about May 17, 2010 WAM requested the credit bureaus to which it regularly reports delete WAM's prior reporting of the subject Account from Plaintiff's consumer credit report."  (Case No. 11-10034, Dkt. # 27 at Pg ID 179 ¶14.)

---

[5] As discussed *supra*, WAM, in its summary judgment motion, alleges that it secured Daniel's TransUnion credit report specifically to answer the following three discovery requests:

> Interrogatory No. 1: Provide explanation substantiating WAM's reporting of the account as "Date Open" on November 1, 2009, as reported to Experian.
>
> Request for Admission No. 13: Admit that you reported the debt to Experian on or about November 1, 2009.
>
> Request for Admission No. 14: Admit that you reported the "date open" as the date of posting the debt, which is November 1, 2009.

(Dkt. # 22-1 at Pg ID 140-41.)

On April 4, 2011, Daniel sent a letter to WAM's lead attorney in the first action confirming that the debt had been removed. (Dkt. # 25 at Pg ID 295.) Thus, if in May 2010 WAM requested the credit bureaus to delete the reporting of the AT&T debt, and Daniel confirmed in April 2011 that the debt had so been removed, then it is unclear why WAM thought that an August 2011 TransUnion report would contain information regarding the "date open" of the AT&T debt.

 Jensen's affidavit, signed August 2, 2011, stated, "On or about November 12, 2009, AT&T placed an account in the name of Rochelle Daniel with WAM for collection. . . . The first time WAM furnished any information about the Account to any consumer credit agency was on or about December 17, 2009." (Case No. 11-10034, Dkt. # 27 at Pg ID 178 ¶¶ 5, 9.) Ultimately, WAM relied on the dates Jensen provided on August 2, 2011, to answer Daniel's August 9, 2011 discovery requests. (Dkt. # 25-6 at Pg ID 300-01, 308-09.) Thus, when WAM received Daniel's requests, it appears that WAM already knew the desired information and never actually needed her TransUnion report.

 WAM cites this court's decision in *Kowell v. GMAC Mortgage, LLC*, in support of its motion. No. 11-15454, 2012 WL 884851 (E.D. Mich. Mar. 15, 2012). In *Kowell*, a mortgagor notified her mortgage servicing company that the company's reporting of a past due debt violated a bankruptcy court's orders and asked the company to admit liability. *Id.* at *1. The company argued that because the mortgagor had not provided

her credit report, the company needed to access her report before it could respond to her allegations. *Id*. at *3. This court, relying on *Spence v. TRW, Inc.*, 92 F.3d 380, 383 (6th Cir. 1996), held that, although the company obtained the report prior to the mortgagor filing a lawsuit, the company could not be expected to admit a violation of the bankruptcy court's orders without first investigating the mortgagor's claim. *Id*. at *4.

The facts of this case are distinguishable from those of *Kowell*. In *Kowell* the company did not have a copy of the mortgagor's credit report and needed one to respond to the allegations against it. Here, WAM had already fully responded to Daniel's allegations, as evidenced by its moving for summary judgment, before it obtained the TransUnion report. Additionally, WAM had a complete copy of Daniel's February 2010 Experian report and did not need the August 2011 TransUnion report to respond to her discovery requests.

Recognizing the weakness of its argument, WAM seeks, in its reply brief, to expand its justification for obtaining Daniel's report beyond the three discovery requests it highlighted in its original brief. WAM argues that "fundamentally the lawsuit and discovery involved every conceivable aspect of WAM's collection and credit reporting practices, and a wide range of liability theories under FCRA and state law concerning WAM's credit reporting of the AT&T debt." (Dkt. # 27 at Pg ID 319.) As this expansive argument was raised for the first time in a reply brief, the court need not consider it. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008). However, WAM

11

is incorrect in its assertion. Because it had already filed for summary judgment, it cannot contend that it needed Daniel's TransUnion report to investigate Daniel's claims or defend itself against the liability theories she posed. It can only argue that it had a legitimate business need in answering Daniel's discovery requests.

An examination of Daniel's August 9, 2011 discovery requests reveals that the only request that implicates TransUnion is Request for Admission No. 27:

> Admit that you did not report the debt to TransUnion or Equifax on December 14, 2009, as indicated in your response to Interrogatory # 2 as Production of Documents, Exhibit 4.

(Dkt. # 25-6 at Pg ID 304.) WAM responded by stating that the request was based on a "misleading misstatement" of a previous response to Daniel's first set of interrogatories and that the previous response "speaks for itself." *Id.* Thus, WAM cannot credibly argue that it needed the TransUnion report to address this discovery request.

WAM has not shown that the undisputed facts of the record establish that it had a permissible purpose for obtaining Daniel's TransUnion report. Therefore, summary judgement will be denied with respect to Daniel's claims that WAM violated 15 U.S.C. § 1681q and negligently or willfully violated 15 U.S.C. § 1681b(f).

## IV. CONCLUSION

Accordingly, IT IS ORDERED that Defendant's motion for summary judgment [Dkt. # 22] is DENIED.

IT IS FURTHER ORDERED that Plaintiff's motion to seal [Dkt. # 26] is GRANTED.

          s/Robert H. Cleland
          ROBERT H. CLELAND
          UNITED STATES DISTRICT JUDGE

Dated: September 16, 2013

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, September 16, 2013, by electronic and/or ordinary mail.

          s/Lisa Wagner
          Case Manager and Deputy Clerk
          (313) 234-5522